IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
CIVIL ACTION NO. 1:20-CV-084-DCK

| MICHAEL J. LINVILLE, | ) |
|---|---|
| Plaintiff, | ) |
| v. | ) ORDER |
| ANDREW SAUL, Commissioner of Social Security, | ) |
| Defendant. | ) |

**THIS MATTER IS BEFORE THE COURT** on Plaintiff's "Motion For Summary Judgment" (Document No. 19) and Defendant's "Motion For Summary Judgment" (Document No. 21). The parties have consented to Magistrate Judge jurisdiction pursuant to 28 U.S.C. § 636(c), and these motions are ripe for disposition. After careful consideration of the written arguments, the administrative record, applicable authority, and testimony from the hearing, the undersigned will direct that Plaintiff's "Motion For Summary Judgment" be <u>denied</u>; that Defendant's "Motion For Summary Judgment" be <u>granted</u>; and that the Commissioner's decision be <u>affirmed</u>.

## I.     BACKGROUND

Plaintiff Michael J. Linville ("Plaintiff"), through counsel, seeks judicial review of an unfavorable administrative decision on his application for disability benefits. (Document No. 1). On or about December 10, 2016, Plaintiff filed an application for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. § 405, alleging an inability to work due to a disabling condition beginning December 15, 2015. (Transcript of the Record of Proceedings ("Tr.") pp. 19, 195-196). The Commissioner of Social

Security (the "Commissioner" or "Defendant") denied Plaintiff's application initially on April 17, 2017, and again after reconsideration on June 27, 2017. (Tr. 19-29, 121, 129). In its "Notice of Reconsideration," the Social Security Administration ("SSA") included the following explanation of its decision:

> The medical evidence shows that your condition is not severe enough to be considered disabling. You are able to think, act in your own interest, communicate, handle your own affairs, and adjust to ordinary emotional stresses without significant difficulties. We do not have sufficient vocational information to determine whether you can perform any of your past relevant work. However, based on the evidence in the file, we have determined that you can adjust to other work. It has been decided, therefore that you are not disabled according to the Social Security Act.

(Tr. 129).

Plaintiff filed a timely written request for a hearing on August 9, 2017. (Tr. 19, 88, 140-141). On March 14, 2019, Plaintiff appeared and testified at a hearing before Administrative Law Judge Keith C. Pilkey (the "ALJ"). (Tr. 19, 36-71). In addition, Kathleen Robbins, a vocational expert ("VE"), and Anna Hamrick, Plaintiff's attorney, appeared at the hearing. Id.

The ALJ issued an unfavorable decision on April 24, 2019, denying Plaintiff's claim. (Tr. 19-29). On May 13, 2019, Plaintiff filed a request for review of the ALJ's decision, which was denied by the Appeals Council on January 30, 2020. (Tr. 1-3). The ALJ decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's review request. (Tr. 1).

Plaintiff's "Complaint" seeks a reversal of the ALJ's determination and was filed in this Court on April 6, 2020. (Document No. 1). On December 18, 2020, the parties consented to Magistrate Judge Jurisdiction and this matter was assigned to the undersigned as presiding judge. (Document No. 18).

Plaintiff's "Motion For Summary Judgment" (Document No. 19) and "Plaintiff's Memorandum In Support Of Motion For Summary Judgment" (Document No. 20) were filed December 23, 2020; and the Commissioner's "Motion For Summary Judgment" (Document No. 21) and "Memorandum In Support Of Defendant's Motion For Summary Judgment" (Document No. 22) were filed February 19, 2021.  Plaintiff declined to file a reply brief, and the time to do so has lapsed.  See Local Rule 7.2(e).

Based on the foregoing, the pending motions are now ripe for review and disposition.

## II.     STANDARD OF REVIEW

The Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review of a final decision of the Commissioner to: (1) whether substantial evidence supports the Commissioner's decision; and (2) whether the Commissioner applied the correct legal standards. Richardson v. Perales, 402 U.S. 389, 390 (1971);  Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

The Fourth Circuit has made clear that it is not for a reviewing court to re-weigh the evidence or to substitute its judgment for that of the Commissioner – so long as that decision is supported by substantial evidence. Hays, 907 F.2d at 1456;  see also, Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986);  Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012).  "Substantial evidence has been defined as 'more than a scintilla and [it] must do more than create a suspicion of the existence of a fact to be established.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  Smith v. Heckler, 782 F.2d 1176, 1179 (4th Cir. 1986) (quoting Perales, 402 U.S. at 401).

Ultimately, it is the duty of the Commissioner, not the courts, to make findings of fact and to resolve conflicts in the evidence.  Hays, 907 F.2d at 1456;  King v. Califano, 599 F.2d 597, 599

(4th Cir. 1979) ("This court does not find facts or try the case de novo when reviewing disability determinations"); Seacrist v. Weinberger, 538 F.2d 1054, 1056-57 (4th Cir. 1976) ("We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistences in the medical evidence, and that it is the claimant who bears the risk of nonpersuasion."). Indeed, so long as the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the reviewing court disagrees with the final outcome. Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

### III. DISCUSSION

The question before the ALJ was whether Plaintiff was under a "disability" as that term of art is defined for Social Security purposes, at any time between December 15, 2015, and March 14, 2019.[1] (Tr. 19-20). To establish entitlement to benefits, Plaintiff has the burden of proving that he was disabled within the meaning of the Social Security Act. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

The Social Security Administration has established a five-step sequential evaluation process for determining if a person is disabled. 20 C.F.R. § 404.1520(a). The five steps are:

(1) whether claimant is engaged in substantial gainful activity - if yes, not disabled;

(2) whether claimant has a severe medically determinable physical or mental impairment, or combination of impairments that meet the duration requirement in § 404.1509 - if no, not disabled;

(3) whether claimant has an impairment or combination of impairments that meets or medically equals one of the

---

[1] Under the Social Security Act, 42 U.S.C. § 301, the term "disability" is defined as an: inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995) (quoting 42 U.S.C. § 423(d)(1)(A)).

4

listings in appendix 1, and meets the duration requirement - if yes, disabled;

(4) whether claimant has the residual functional capacity ("RFC") to perform her/his past relevant work - if yes, not disabled; and

(5) whether considering claimant's RFC, age, education, and work experience he/she can make an adjustment to other work - if yes, not disabled.

20 C.F.R. §§ 404.1520(a)(4)(i-v).

The burden of production and proof rests with the claimant during the first four steps; if claimant is able to carry this burden, then the burden shifts to the Commissioner at the fifth step to show that work the claimant could perform is available in the national economy. Pass, 65 F.3d at 1203. In this case, the ALJ determined at the fifth step that Plaintiff was not disabled. (Tr. 29).

First, the ALJ determined that Plaintiff had not engaged in any substantial gainful activity since December 15, 2015, his alleged disability onset date. (Tr. 21). At the second step, the ALJ found that congenital nystagmus; dry eye syndrome; chronic headaches; and obesity were severe impairments.[2] (Tr. 22-23). At the third step, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed in 20 C.F.R. § 404, Subpart P, Appendix 1. (Tr. 23).

Next, the ALJ assessed Plaintiff's RFC and found that he retained the capacity to perform medium work activity as defined in 20 CFR § 404.1567, with the following limitations:

> the claimant cannot climb ladders, ropes, and scaffolds; he cannot perform work around hazards such as unprotected heights or hazardous moving machinery; no operating motor vehicles; the claimant is unable to read an ordinary book print or newspaper without a magnifier; he is able to avoid ordinary hazards such as

---

[2] The determination at the second step as to whether an impairment is "severe" under the regulations is a *de minimis* test, intended to weed out clearly unmeritorious claims at an early stage. See Bowen v. Yuckert, 482 U.S. 137 (1987).

>           boxes on the floor or doors that are ajar; and the claimant cannot
>           perform jobs requiring excellent depth perception.

(Tr. 24).

In making his finding, the ALJ specifically stated that he "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and SSRs 96-4p and 96-7p." Id.

At the fourth step, the ALJ held that Plaintiff could not perform his past relevant work as a material handler, floor waxer, floor cleaner/janitor, camp ground attendant, and stock clerk. (Tr. 27). At the fifth and final step, the ALJ concluded based on the testimony of the VE and "considering the claimant's age, education, work experience in conjunction with the Medical Vocational Guidelines, 20 CFR Part 404, Subpart P, Appendix 2," that jobs existed in significant numbers in the national economy that Plaintiff could perform. (Tr. 28). Specifically, the VE testified that according to the factors given by the ALJ, occupations claimant could perform included a night cleaner, a grocery bagger, and a church sexton janitorial. Id. Therefore, the ALJ concluded that Plaintiff was not under a "disability," as defined by the Social Security Act, at any time between December 15, 2015, and the date of his decision to deny Plaintiff's claim, April 24, 2019. (Tr. 29).

Plaintiff on appeal to this Court makes the following assignments of error: (1) that the ALJ failed to adequately account for the vocationally limiting effects of Plaintiff's congenital nystagmus and dry eye syndrome in the RFC assessment; and (2) that the ALJ failed to adequately explain the discrepancy between his RFC assessment and the partial weight he afforded to the state agency physicians' opinion. (Document No. 20, p. 4). The undersigned will discuss each of these contentions in turn.

**A.      Vision Limitations**

In the first assignment of error, Plaintiff argues that the ALJ failed to adequately account for the vocationally limiting effects of Plaintiff's congenital nystagmus and dry eye syndrome in the RFC.  (Document No. 20, pp. 4-8).  Plaintiff notes that his eyes are dry and sensitive to light. Id. at 4.  This light sensitivity, along with difficulty concentrating on the job, often results in headaches, which Plaintiff treats somewhat effectively with Tylenol and Ibuprofen.  (Tr. 50, 54). Though the ALJ notes visual restrictions such as Plaintiff's inability to read book print or newspapers without a magnifier, as well as an inability to perform jobs requiring excellent depth perception, Plaintiff suggests that the effects of his visual impairments were still not sufficiently accounted for in the RFC.  (Document No. 20, p. 5).  Plaintiff asserts that the ALJ made only a "conclusory statement" that the visual impairments are not as severe as alleged, without further explanation for his exclusion of the additional visual limitations from the RFC.  Id. at 6 (citing Tr. 24-26).  This, Plaintiff argues, falls short of the "accurate and logical bridge" necessary to link evidence to the conclusion.  (Document No. 20, p. 7) (citing Monroe v. Colvin, 826 F.3d 176, 189 (4th Cir. 2016));  see also Lopez ex. Rel. Lopez v. Barnhart, 336 F.3d 535, 540 (7th Cir. 2003).

Plaintiff points out that the burden of proof shifts to Defendant at the fifth step of the evaluation.  (Document No. 20, p. 7).  The VE was not asked any questions regarding the impact of limited near and far visual acuity, accommodation, or blurry vision resulting in headaches during this inquiry.  Plaintiff finds this to be "particularly troubling with regards to Mr. Linville's exposure to bright and florescent lighting," because that is a limitation which is not addressed by the Dictionary of Occupation Titles, "and for which the testimony of a vocational expert is normally required."  Id. at pp. 7-8 (citing Hooper v. Heckler, 715 F. 2d 148, 150 (4th Cir. 1983)). Plaintiff further highlights the general need for vocational expert testimony to prove the existence

of other work when the RFC to work at a given exertional level is affected by non-exertional impairments. (Document No. 20, p. 8) (citing Grant v. Schweiker, 699 F.2d 189, 192 (4th Cir. 1983)). In addition, Plaintiff contends that the lack of adequate support from the VE makes it impossible to say that the ALJ's erroneous omission is not harmful. Id. at 8.

In response, Defendant argues that the ALJ properly included limitations restricting Plaintiff from work involving "climbing ladders, ropes or scaffolds; hazards such as unprotected heights or hazardous moving machinery," while acknowledging Plaintiff's ability to avoid ordinary hazards. (Document No. 22, p. 7) (citing Tr. 24). Defendant further notes that the ALJ explained the process of evaluating symptoms. (Document No. 22, p. 7). The ALJ found that the record established severe impairments that could cause Plaintiff's alleged symptoms, but the "allegations of intensity, persistence, and limiting effects of those symptoms were not consistent with and supported by the evidentiary record." Id. (quoting Tr. 24-25) (see also Craig v. Chater, 76 F.3d 585, 594 (4th Cir. 1996)). Defendant states in his brief:

> To support this finding, the ALJ acknowledged Mr. Linville's allegations and explained his rationale when examining the medical evidence and addressing relevant factors including Mr. Linville's treatment history, objective findings, and daily activities (Tr. 22-27). See 20 C.F.R. § 404.1529(c)(3). For instance, the ALJ observed that an ophthalmologist treated Mr. Linville's vision impairment and prescribed glasses (Tr. 25 citing Tr. 415 (Mr. Linville should wear bifocal corrective lenses full time to address vision deficits)). (See Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986) (noting that a symptom that can be reasonably controlled by medication or treatment is not disabling)).

(Document No. 22, p. 7).

Defendant points out that this Court addressed a similar issue in Holman v. Berryhill, 2018 WL 1320052 (W.D.N.C. Mar. 14, 2018). (Document No. 22, p. 6). In Holman, the plaintiff argued that nearly identical limiting instructions to those given by the ALJ in the present case did not

8

properly account for his severe visual impairments. Holman, at *4. As in the present case, the plaintiff in Holman asserted this indicated the ALJ did not properly consider the evidence. Id. In affirming the ALJ's decision in Holman, this Court observed that:

> The ALJ noted, for instance that the record documented post-surgical corneal changes . . . , but contrasted this with the fact that eye examinations consistently revealed "normal pupil reaction, normal extra-ocular motion, and normal lids with good closure." The ALJ noted, for instance, that the record documented post-surgical corneal changes, but contrasted this with the fact that eye examinations consistently revealed "normal pupil reaction, normal extra-ocular motion, and normal lids with good closure." . . . The ALJ noted that in spite of his eye pathologies, Mr. [Holman] retained the ability to fish, work on a car with his son, drive short distances, and babysit children, among other tasks."

Id. at 5 (internal citations omitted).

In response to the issue raised about the VE's testimony, Defendant points out that "the VE expressed no confusion about Mr. Linville's visual limitations when testifying about job incidence," and she gave a "detailed explanation to support her testimony." (Document No 22, p. 12) (citing Tr. 61-67) (see also Williams v. Comm'r of Social Sec., 2015 WL 2354563 at *6 (N.D.W. Va. May 15, 2015)). Finally, if this Court does find that the ALJ erred in his failure to describe the full extent of Mr. Linville's visual limitations, Defendant argues that such an error is harmless, as substantial evidence supports the ALJ's RFC finding. (Document No. 22, p. 12-13).

The undersigned finds Defendant's argument to be persuasive. The undersigned observes that the ALJ, citing evidence of record, thoroughly discussed Plaintiff's vision impairments and related headaches. See (Tr. 24-25). The ALJ's explanation of his process demonstrates that he did, in fact, account for the vocationally limiting effects of Plaintiff's congenital nystagmus and dry eye syndrome. Id. The ALJ identified the severe impairments that could reasonably cause the alleged symptoms, and he concluded that the alleged limiting effects of those symptoms was not

9

consistent with the record. (Document No. 22, p. 7). Further, the ALJ discussed the treatment Plaintiff has received for his eye impairments, and he observed that such treatments limit the ill effects of the impairments. (Tr. 25). The undersigned is satisfied that the ALJ thoroughly and adequately accounted for the effects of Plaintiff's visual impairments. Id.

While the undersigned recognizes that Plaintiff is unable to drive, a factor that could make this case somewhat distinguishable from Holman, the reasoning from Holman is still applicable in this instance. The ALJ noted that Plaintiff received a prescription for glasses from an ophthalmologist; that the ophthalmologist did not diagnose Plaintiff with nystagmus; that Plaintiff denied experiencing dry eyes during primary care visits in November of 2016; and that Plaintiff's headaches were treated with over-the-counter medication. (Tr. 25). Finally, the ALJ explained that there is no record of multiple incidents of treatment from the emergency department, or inpatient hospitalization for Plaintiff's eye impairments or headaches. Id. Similar to the lifestyle observations that the ALJ made in Holman, the ALJ here noted that Plaintiff "can independently perform most personal care, can mow the yard, and watch television." (Tr. 26) (citing Tr. 287-294).

On the issue of the VE's testimony, the undersigned finds no error. Although Plaintiff rightly points out that specific questions were not asked about some symptoms, Defendant is persuasive in his argument that the VE expressed no confusion about Plaintiff's ailments and offered detailed explanation in her testimony. (Document No. 22, p. 13). The VE gave a substantial amount of testimony related to Plaintiff's visual impairments. (Tr. 59-70).

**B.     RFC Assessment**

Next, Plaintiff argues that the ALJ did not adequately explain the discrepancy between his RFC assessment and the state agency physicians' assessments, to which he purportedly afforded

10

Case 1:20-cv-00084-DCK   Document 23   Filed 06/17/21   Page 10 of 13

only partial weight. (Document No. 20, p. 8). Dr. Karen Roane and Dr. Woods, both state agency physicians, concluded that Plaintiff had limited near acuity, limited far acuity, limited depth perception, and limited field of vision. Id. Plaintiff notes that the ALJ "purported to give these decisions 'partial weight'" in his decision. Id. at p. 9 (citing Tr. 26). Plaintiff also highlights that the ALJ only identifies the physicians' failure to provide exertional or postural limitations due to Plaintiff's obesity and headaches as cause for discrediting them. Id. Further, Plaintiff states that the ALJ gives no rationale related to the assessment of Plaintiff's visual limitations for discrediting the physicians. Id.

Ultimately, Plaintiff argues that the fact that limited near and far acuity are not specifically mentioned in the ALJ's RFC determination creates a material conflict between the RFC and the state agency physicians' assessment. Id. Plaintiff asserts that such a conflict without explanation would require remand. Id. at p. 10 (citing Stathis v. Sullivan, 964 F.2d 850, 851-52 (8th Cir. 1992); see also Radford v. Colvin, 734 F.3d 288, 295 (4th Cir. 2013)).

In response, Defendant contends that the ALJ "properly evaluated the opinion evidence by considering the applicable regulatory factors and providing supporting rationale" in his decision. (Document No 22, pp. 13, 14-16). Principally, Defendant asserts that the visual limitations indicated in the RFC and the state agency physicians' medical opinions do not materially conflict, so any difference that does exist would not necessarily call for remand. (Document No. 22, p. 14). In support, Defendant notes that the ALJ did incorporate the physicians' opinions when he included specific nonexertional limitations in the RFC. (Document No. 22, p. 14) (citing Tr. 24).

The undersigned again finds Defendant's argument persuasive, and the ALJ's decision sufficient. The ALJ opined:

> As for the opinion evidence, the undersigned gives partial weight to
> State agency physical consultants who opined that the claimant can

11

> perform work at all exertional levels with vision and environmental limitations (Tr. 90-104, 106-119). These opinions are supported by the claimant's treatment record for his eye impairments, which includes using a magnifier to read and not being able to obtain a driver's license. However, not providing any exertional or postural limitations is inconsistent with the claimant's obesity and ongoing allegation of headaches.

(Tr. 26).

Though Plaintiff asserts that the ALJ failed to adequately explain the discrepancy between the RFC and the opinion of the state agency physicians, the undersigned is satisfied that the ALJ's explanation is sufficient. As suggested by Defendant, the ALJ did offer supporting rationale for his decision. (See Tr. 24). The ALJ weighed the opinion evidence regarding visual limitations to an extent in determining the RFC. Id. In doing so, the ALJ included additional, more restrictive limitations in the RFC than the agency physicians provided. (Tr. 26). The undersigned is satisfied that the RFC does not materially conflict with the evidence and the ALJ was reasonably thorough in explaining how he came to his conclusions. (Document No. 22, p. 14) (Tr. 26). Plaintiff's argument is tantamount to suggesting that this Court should re-weigh the opinion evidence.

Based on the foregoing, the undersigned finds no error by the ALJ requiring reversal or remand.

## IV. CONCLUSION

The undersigned finds that there is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," and thus substantial evidence supports the Commissioner's decision. Richardson v. Perales, 402 U.S. 389, 401 (1971); Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005). Further, the undersigned is satisfied that the correct legal standard was applied. As such, the undersigned will direct that the Commissioner's decision be affirmed.

12

**IT IS, THEREFORE, ORDERED** that: Plaintiff's "Motion For Summary Judgment" (Document No. 19) is **DENIED**; the Defendant's "Motion For Summary Judgment" (Document No. 21) is **GRANTED**; and the Commissioner's determination is **AFFIRMED.**

**SO ORDERED**.

Signed: June 16, 2021

David C. Keesler
United States Magistrate Judge